UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Bernard Miles,

               Plaintiff,

    v.

Michael Coleman, City of Brooklyn Center,
Detective Lund, Detective Sonnenstahl,
Detective Husarik, Detective Poidinger,
Deputy Fleck, Lieutenant Dietzman, City of
Minneapolis, and Hennepin County,

               Defendants.

Case No. 15-cv-3696 (WMW/FLN)

**ORDER GRANTING DEFENDANTS'
MOTION FOR DISMISSAL AND/OR
SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants' Motion for Dismissal and/or Summary Judgment. (Dkt. 29.) For the reasons addressed below, the Court grants Defendants' motion and dismisses the complaint.

## BACKGROUND

On or about February 1, 2011, Defendant Michael Coleman, who was employed as a peace officer by the City of Brooklyn Center, Minnesota, and assigned to the Hennepin County Sheriff's Office Violent Offender Task Force, prepared and signed an application for a search warrant and a supporting affidavit for the purpose of searching an apartment in Minneapolis (Apartment #2) for controlled substances and firearms. The five-page supporting affidavit describes a criminal investigation of Plaintiff Bernard Miles and another individual for alleged narcotics trafficking. The affidavit explains that a confidential reliable informant (CRI) who had known Miles for several years had

recently seen Miles possessing crack cocaine and a firearm inside Apartment #2. The affidavit also states that a person who lives in the same apartment building had recently complained to the Hennepin County Sheriff's Office about noise and people visiting and leaving Apartment #2 at all hours of the day and night.

As relevant here, the affidavit includes the following statement about Miles's criminal history:

> Your affiant has learned through a criminal history check that Miles was convicted on 09/06/1994 for Simple Robbery; arrested on 09/06/1995 for Robbery but was not prosecuted; convicted on 08/10/1998 for 2nd Degree Aggravated Robbery; convicted on 09/16/2003 for 2nd Degree Aggravated Robbery; convicted on 04/17/2007 for 1st Degree Aggravated Robbery.

The affidavit also includes the following statement addressing the need for a nighttime search of Apartment #2:

> A nighttime search outside the hours between 7:00 AM and 8:00 PM is necessary to prevent the loss, destruction or removal of the objects of the search or to protect the searchers or the public because:
>
> The apartment (i.e. the subject of this search warrant) is occupied by the suspects. The CRI has observed at least one handgun inside of the apartment in the recent past. The apartment building is located adjacent to an elementary school. Your affiant believes that the residence can be more safely and effectively approached during nighttime hours so as to protect the safety of the Peace Officers executing the search warrant and to eliminate the presence of children coming, going, or occupying school property.

A state court judge signed the search warrant on February 1, 2011, finding that probable cause existed to justify the search, that a nighttime search "is necessary to prevent the loss, destruction, or removal of the objects of said search, or to protect the searchers or

the public," and that an unannounced search "is necessary to prevent the loss, destruction, or removal of the objects of said search and to protect the safety of the peace officers."

That same day, at 9:15 p.m., Officer Coleman and several other officers executed the search warrant and conducted an unannounced nighttime search of Apartment #2. Miles was not present when the law enforcement officers began their search, but he arrived a short time later. Among other things, the law enforcement officers recovered substances that they suspected to be cocaine and a loaded firearm with an obliterated serial number that was located in a lock box under the bed in Miles's bedroom. Officers transported Miles to the Hennepin County Adult Detention Center.

On February 3, 2011, the State of Minnesota filed a criminal complaint in state court charging Miles with unlawful possession of a firearm and third-degree possession of a controlled substance, both of which are felony violations of Minnesota law. Miles subsequently moved to suppress the evidence obtained by the law enforcement officers during the search of Apartment #2. In a July 15, 2011 order, the state court granted Miles's motion and suppressed the evidence recovered from Apartment #2. The state court found that the robbery convictions described in Officer Coleman's affidavit supporting the search warrant application were incorrectly attributed to Miles. In actuality, Miles had no robbery convictions or other weapons-related convictions in his criminal history, and the robbery convictions referenced in the affidavit were attributable to a different individual. The state court expressly declined to find that this error was intentional, reckless, negligent, or the result of any bad faith on the part of Officer Coleman. The state court concluded that, even if this erroneous information were

removed from the affidavit, probable cause would exist to support the search warrant and to justify the unannounced entry.

The state court nonetheless concluded that, absent the erroneously included criminal history, the warrant application would *not* support a finding of reasonable suspicion necessary to justify the nighttime search authorization. The state court concluded that the search-warrant application failed to satisfy the requirements of Minn. Stat. § 626.14 (2016), which imposes restrictions on the execution of search warrants after 8:00 p.m. This defect, according to the state court, rendered the search unreasonable under the Fourth Amendment to the United States Constitution. Accordingly, the state court suppressed the evidence obtained during the search. The State of Minnesota subsequently dismissed the criminal complaint against Miles.

In September 2015, Miles commenced this action against Officer Coleman and six other law enforcement officers in their individual capacities (law enforcement officer defendants), as well as the City of Brooklyn Center and Hennepin County (municipal defendants).[1] Counts I through III of the complaint assert claims against the law enforcement officer defendants under 42 U.S.C. § 1983 for alleged violations of Miles's constitutional rights. Counts IV through VI assert state-law tort claims against all defendants. And Count VII alleges that the municipal defendants are liable to Miles for property damage caused during the search, pursuant to Minn. Stat. § 626.74 (2016). Defendants have moved for either dismissal or summary judgment as to all claims.

---

[1] Miles voluntarily dismissed the City of Minneapolis as a defendant in October 2015.

# ANALYSIS

Defendants characterize their motion as a motion for "dismissal and/or summary judgment." A complaint must be dismissed when it fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The district court may consider exhibits attached to the complaint and documents that are necessarily embraced by the complaint without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

A motion must be treated as a motion for summary judgment, however, when matters outside the pleadings are presented to and considered by the district court. *See* Fed. R. Civ. P. 12(d). Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). When considering a motion for summary judgment, the district court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802-03 (8th Cir. 2014). A nonmoving party asserting that a fact is genuinely disputed must cite "particular parts of materials in the record" that support the assertion. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik*, 47 F.3d at 957 (internal quotation marks omitted).

## I.     The *Rooker-Feldman* Doctrine

As a threshold matter, Defendants assert that Miles's claims are barred by the *Rooker-Feldman* doctrine. Because the *Rooker-Feldman* doctrine implicates the Court's subject-matter jurisdiction, the Court addresses this issue first. *See Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005).

"The *Rooker-Feldman* doctrine provides that, 'with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.' " *Id.* (quoting *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003)). The *Rooker-Feldman* doctrine applies only to cases brought by parties who received an unfavorable decision in state court and are "complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine

"applies only in limited circumstances, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (citation omitted) (internal quotation marks omitted).

Defendants argue that Miles's claims are barred by the *Rooker-Feldman* doctrine because Miles is seeking to "circumvent . . . and essentially appeal" the state court's July 2011 order granting Miles's motion to suppress evidence in the criminal case against him. But Defendants' reliance on the *Rooker-Feldman* doctrine is misplaced, because Miles *prevailed* on his motion to suppress evidence in state court. Because Miles did not receive an unfavorable decision in state court and is not complaining of injuries caused by a state-court judgment, the *Rooker-Feldman* doctrine does not deprive this Court of subject-matter jurisdiction over Miles's claims. *See Exxon Mobil*, 544 U.S. at 284.

## II.     Section 1983 Claims (Counts I - III)

Counts I through III of Miles's complaint assert claims against the law enforcement officer defendants, in their individual capacities, under 42 U.S.C. § 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Section 1983 is not a source of substantive rights; rather, a district court addressing a claim pursuant to Section 1983 must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The law enforcement officer defendants seek summary judgment on Miles's Section 1983 claims on the basis of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The qualified-immunity inquiry is two-fold: (1) whether the plaintiff has asserted facts that demonstrate the violation of a constitutional right and (2) whether that right was clearly established at the time of the defendant's alleged conduct. *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012). District courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236. "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof. The plaintiff, however, must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002).

When performing the qualified immunity analysis, a district court assesses the facts as they appeared to the state actors. *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). When determining whether a right is clearly established, the district court must determine whether a reasonable officer would know that the officer's conduct was unlawful in the circumstances presented. *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236-42; *accord Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in

gray areas; they are liable for transgressing bright lines." (internal quotation marks omitted)). Qualified immunity provides law enforcement officers "breathing room" to exercise "reasonable but mistaken judgment[ ]." *Messerschmidt*, 565 U.S. at 546 (internal quotation marks omitted). As such, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (internal quotation marks omitted).

Counts I and II of Miles's complaint pertain to the search and seizure of Miles's personal property pursuant to an allegedly invalid warrant. Count III pertains to Miles's subsequent warrantless arrest that occurred as a result of the search. The Court analyzes the search-and-seizure claims and the warrantless-arrest claim separately.

## A. Counts I and II

Miles alleges in Counts I and II that the law enforcement officer defendants, in their individual capacities, violated his rights under the Fourth Amendment to the United States Constitution to be free from the unreasonable search and seizure of his personal property.[2]

_____

[2] Count II of the complaint also invokes the Fourteenth Amendment. But "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

An affidavit supporting a search warrant is presumed truthful. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). But a warrant that is based on an affidavit that contains a deliberate falsehood or reckless disregard for the truth violates the Fourth Amendment and thereby subjects the police officer to liability under 42 U.S.C. § 1983. *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009); *see also Franks*, 438 U.S. at 171. Such an occurrence commonly is referred to as a "*Franks* violation."

A law enforcement officer is entitled to qualified immunity for an alleged *Franks* violation unless (1) the plaintiff submits probative evidence that the affidavit contained a deliberate falsehood or a reckless disregard of the truth *and* (2) an affidavit reconstructed without the falsehood would not have been sufficient to support a finding of probable cause. *Morris*, 563 F.3d at 403. In this context, "truth" means that the information in the affidavit is "believed or appropriately accepted by the affiant as true." *Id.* at 402 (quoting *Franks*, 438 U.S. at 165). Negligence or an innocent mistake is not sufficient to establish a *Franks* violation. *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010). "The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of [the affiant's] statements or had obvious reasons to doubt the accuracy of the information . . . reported." *Id.*

Here, it is undisputed that Officer Coleman's affidavit submitted in support of the search warrant contained inaccurate criminal-history information. Miles does not assert that this error was intentional. Rather, he contends that Officer Coleman acted with reckless disregard for the truth. When challenging a defendant's assertion of qualified

immunity as to an alleged *Franks* violation, it is the plaintiff's burden to establish that the falsehood was included in the affidavit with a reckless disregard for the truth, *and* the Court must conclude that the affidavit would not have supported a finding of probable cause if the falsehood were excluded. *Morris*, 563 F.3d at 403. The Court addresses each requirement in turn.

### 1. Reckless Disregard for the Truth

Miles asserts that this Court "must infer that Coleman was reckless" because a "simple check of [the Minnesota Court Information System] or even Google" would have alerted Officer Coleman to the error.[3] To withstand a motion for summary judgment on qualified-immunity grounds, Miles must substantiate the allegations in the complaint with sufficient probative evidence that would permit a finding in his favor based on "more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation marks omitted). And, although disputed facts must be construed in favor of the nonmoving party on a motion for summary judgment, courts "may not infer bad motive absent even a scintilla of material fact supporting that inference." *Morris*, 563 F.3d at 403. A finding of bad motive requires specific affirmative evidence, such as an affidavit or deposition testimony, from which a jury could find that the affiant recklessly disregarded the truth. *Id.*

---

[3] Because the state court's July 2011 suppression order expressly declined to determine whether this error was reckless, this issue is not subject to any preclusion analysis.

Here, the record demonstrates that when Officer Coleman requested Miles's criminal history for use in the warrant application, a clerical staff member searched Miles's name and date of birth. The results of that search erroneously included the criminal history of another individual who used Miles's name as one of several aliases. At his deposition in this case, Officer Coleman testified that he first learned that his affidavit contained erroneous criminal-history information from the county attorney at some point *after* Miles had been charged. Aside from speculative, conclusory arguments, Miles has presented no evidence to rebut the foregoing evidence.[4] On this record, when viewed in the light most favorable to Miles, there is no evidence from which a jury reasonably could conclude that Officer Coleman "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Butler*, 594 F.3d at 961.

## 2. Probable Cause in Reconstructed Affidavit

Even if there were a genuine dispute of material fact as to whether Officer Coleman acted with reckless disregard for the truth, Officer Coleman nonetheless is entitled to qualified immunity unless the Court also concludes that the affidavit would not have supported a finding of probable cause if it were reconstructed to exclude the false information. "A warrant is supported by probable cause if there is a fair probability that

---

[4]     The record contains a Minnesota Bureau of Criminal Apprehension document, marked as Exhibit 6 to Miles's deposition, which reflects the incorrect criminal history that was included in Officer Coleman's affidavit. Because that document indicates that it was retrieved on March 21, 2016, nothing in that document is probative of whether Officer Coleman should have been alerted to the error when he completed his affidavit in early 2011. Indeed, the only evidence in the record regarding the steps Officer Coleman took when preparing his affidavit is the deposition testimony of Officer Coleman.

contraband or evidence of a crime will be found in the place to be searched." *United States v. Paton*, 535 F.3d 829, 836 (8th Cir. 2008). Whether probable cause exists is determined based on the totality of the circumstances. *Id.*

Here, the affidavit includes information provided by a CRI, corroborated by police and a neighbor of Miles, as to the location of Miles's apartment, the identities of Miles and another suspect, and statements about controlled substances and possible controlled-substance sales occurring at Miles's apartment. The CRI also saw illicit drugs and a firearm in Miles's apartment. The erroneous criminal-history information has no bearing on the probability that contraband or evidence of a crime would be found in Miles's apartment. Thus, for the same reasons articulated in the state court's July 2011 suppression order, this Court concludes that Officer Coleman's affidavit would have supported a finding of probable cause even without the inclusion of the erroneous criminal history.

Miles nonetheless contends that the affidavit would not have supported a finding of reasonable suspicion to justify a *nighttime* search absent the erroneous criminal-history information. Whether a warrant is supported by probable cause to conduct a search is a separate question from whether the nighttime authorization in the warrant is supported by reasonable suspicion. *See United States v. Maholy*, 1 F.3d 718, 721 n.5 (8th Cir. 1993) (distinguishing between a challenge to probable cause, which defendant was *not* asserting, and a challenge to the search warrant's nighttime authorization). Indeed, when the state court suppressed the evidence in Miles's criminal case, the court concluded that

probable cause supported the search but that the affidavit lacked the requisite reasonable suspicion to support the nighttime authorization in the warrant.

When an alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the same standard of "objective reasonableness" that applies when invoking the good-faith exception to the exclusionary rule also applies when determining whether an officer who obtained or relied on an invalid warrant is entitled to qualified immunity. *Messerschmidt*, 565 U.S. at 546 n.1. Thus, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.' " *Id.* at 546. But an exception to this principle exists "when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.' " *Id.* at 547 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The threshold for establishing this exception "is a high one." *Id.*

Here, in contrast to *Messerschmidt*, the question is not whether it was reasonable for the executing officers to rely on the warrant's issuance; rather, the focus of the good-faith inquiry here is on the reasonableness of the law enforcement officer defendants' reliance on the *nighttime authorization* aspect of the warrant. In its July 2011 suppression order, the state court did not conduct a good-faith analysis of the officers' conduct, expressly declining to "find, [or] in any way . . . imply, bad faith upon the part of the officer who wrote and submitted the affidavit." Assuming, without deciding, that the nighttime authorization in the search warrant was invalid under the Fourth Amendment, this Court must determine whether the law enforcement officer defendants' reliance on the nighttime authorization was objectively reasonable and in good faith.

In *Maholy*, the United States Court of Appeals for the Eighth Circuit addressed circumstances similar to those presented here. In that case, the criminal defendant argued that the nighttime search of his residence—which was authorized on the face of the warrant—violated the Fourth Amendment because the law enforcement officer's affidavit "provided insufficient justification to support the issuance of a nighttime search warrant." *Maholy*, 1 F.3d at 721. When assessing whether the law enforcement officers acted in good faith on the allegedly deficient nighttime authorization in the warrant, the Eighth Circuit looked to whether the officers "had an objectively reasonable basis to believe they were complying with [Arkansas] state law and the Fourth Amendment" when they sought and executed the nighttime warrant. *Id.* at 722 (internal quotation marks omitted). After analyzing the Arkansas Supreme Court's interpretation of that state's requirements for obtaining authorization to execute a search warrant at night, the Eighth Circuit concluded that the factual statements in the affidavit "sufficiently support a finding that the warrant could be safely executed only at nighttime so that the officers serving the warrant could rely in good faith on the issuing judge's authorization of a nighttime search." *Id.* at 723. Accordingly, the court concluded that the good-faith exception to the exclusionary rule was satisfied. *Id.*

Turning to the relevant Minnesota law, Minn. Stat. § 626.14 (2016) provides:

A search warrant may be served only between the hours of 7:00 a.m. and 8:00 p.m. unless the court determines on the basis of facts stated in the affidavits that a nighttime search outside those hours is necessary to prevent the loss, destruction, or removal of the objects of the search or to protect the searchers or the public.

When Officer Coleman applied for the search warrant at issue in this case, the Minnesota Supreme Court had analyzed Section 626.14 on several occasions. The most recent Minnesota Supreme Court decision that directly addresses this question is *State v. Bourke*, 718 N.W.2d 922 (Minn. 2006).[5]

In *Bourke*, recognizing that it had not previously "articulated the quantum of proof required for the authorization of a nighttime search under the statute," the Minnesota Supreme Court held that "the statute requires at least a finding that there is reasonable suspicion to believe a nighttime search is necessary to preserve evidence or to protect officer or public safety." 718 N.W.2d at 926. This "reasonable suspicion showing is not high," but it requires "something more than an unarticulated hunch," and "the officer must be able to point to something that objectively supports the suspicion at issue." *Id.* at 927 (internal quotation marks omitted). The Minnesota Supreme Court concluded that the affidavit in *Bourke* was deficient in this regard because it merely contained the following "boilerplate language" in support of the nighttime authorization:

> A nighttime search is (~~not~~) necessary (including the hours of 8:00 p.m. to 7:00 a.m.) to prevent the loss, destruction or removal of the objects of the search because: of the lateness of the hour and the possible destruction of evidence.

*Id.* at 928.

---

[5] In its two most recent decisions on this issue, because it was undisputed that the grounds for a nighttime search were not established, the Minnesota Supreme Court did not specifically address what those requirements entail. *See State v. Jackson*, 742 N.W.2d 163, 168 (Minn. 2007); *State v. Jordan*, 742 N.W.2d 149, 153 (Minn. 2007).

In contrast to the facts in *Bourke*, the record here demonstrates that Officer Coleman provided the following basis for seeking authorization to execute the warrant at night:

> A nighttime search outside the hours between 7:00 AM and 8:00 PM is necessary to prevent the loss, destruction or removal of the objects of the search or to protect the searchers or the public because:
>
> The apartment (i.e. the subject of this search warrant) is occupied by the suspects. The CRI has observed at least one handgun inside of the apartment in the recent past. The apartment building is located adjacent to an elementary school. Your affiant believes that the residence can be more safely and effectively approached during nighttime hours so as to protect the safety of the Peace Officers executing the search warrant and to eliminate the presence of children coming, going, or occupying school property.

When granting Miles's suppression motion, the state court concluded that the foregoing statements do not, on their own, support a finding of reasonable suspicion to authorize a nighttime search. But whether that conclusion was correct is not the question currently before this Court. Rather, the question here is whether, in light of the Minnesota Supreme Court's articulation of the "reasonable suspicion" standard in *Bourke*, the officers executing the search warrant "could rely in good faith on the issuing judge's authorization of a nighttime search." *Maholy*, 1 F.3d at 723. That question, which the state court did not decide, must be answered in the affirmative on this record.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt*, 565 U.S. at 553 (internal quotation marks omitted). Even if an officer's judgment as to the scope of the warrant may have been mistaken, it is not necessarily "plainly incompetent" so as to defeat qualified

immunity.  *See id.*  Officer Coleman's affidavit includes more than boilerplate language regarding the need to execute the search warrant at night.  It articulates specific facts pertaining to officer and public safety.  Moreover, the affidavit's stated justification for a nighttime search does *not* rely on the incorrect criminal history information, which appears several pages earlier in the affidavit and is not referenced in connection with the nighttime search request.  On this record, Officer Coleman and the other law enforcement officer defendants were justified in their belief that the affidavit met the reasonable-suspicion standard articulated in *Bourke*, and therefore they could rely in good faith on the issuing judge's authorization of the nighttime search.  This conclusion remains true even if their belief may have been mistaken.  *See id.*

In summary, Miles has not demonstrated that the affidavit supporting the search of Apartment #2 contained falsehoods that were included intentionally or with a reckless disregard for the truth; and the affidavit would have supported a finding of probable cause even if the erroneous information were excluded.  In addition, Miles's arguments challenging the nighttime authorization in the search warrant are of no avail because, even assuming that the affidavit was deficient in this regard, the law enforcement officer defendants were objectively reasonable in relying on the validity of the nighttime authorization.  Because the law enforcement officer defendants are entitled to qualified immunity with respect to the procurement of the search warrant,[6] Defendants' motion for summary judgment as to Counts I and II is granted.

---

[6]     Miles also argues that there is a genuine issue of material fact as to whether the execution of the search warrant was constitutionally unreasonable based on Officer

## B. Count III

Count III of the complaint alleges that the law enforcement officer defendants, in their individual capacities, violated Miles's rights under the Fourth Amendment by unreasonably arresting and jailing Miles without probable cause or lawful authority.

"To justify a warrantless arrest, probable cause must exist." *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003). Courts review the totality of the circumstances based on the information available to the officers at the time of the arrest to determine whether probable cause existed. *Id.* Probable cause exists at the time of arrest "when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense [is] being or [has] been committed by the person to be arrested." *Id.* Because law enforcement officers are entitled to qualified immunity if they arrest a suspect under the objectively reasonable, but mistaken, belief that they have probable cause to do so, the issue is not whether there was probable cause in fact. *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). Rather, the issue is whether the existence of probable cause was arguable. *Id.*

Here, the law enforcement officer defendants had both probable cause in fact *and* arguable probable cause. The officers recovered a loaded firearm with an obliterated serial number from a lock box that belonged to Miles located under Miles's bed. Miles does not dispute that, at the time of his arrest, he was a convicted felon who was not

---

Coleman's allegedly "blatant effort to frame Mr. Miles." But those allegations are not pleaded in the complaint and, therefore, the Court need not address this argument. *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (concluding that a complaint cannot be amended through a brief).

eligible to possess a firearm and the arresting officers knew this fact. The only facts Miles appears to dispute are whether he owned the firearm and whether was in *actual* possession of the firearm. But under Minn. Stat. § 624.713, either actual or constructive possession of a firearm by an ineligible person is sufficient to support a criminal conviction. *See State v. Loyd*, 321 N.W.2d 901, 902 (Minn. 1982). Constructive possession of a firearm is established under Section 624.713 if, although not in physical possession of the firearm, the defendant consciously exercises dominion and control over it. *State v. Willis*, 320 N.W.2d 726, 728-29 (Minn. 1982). The officers who arrested Miles clearly had both probable cause in fact and arguable probable cause to do so.

Accordingly, because the law enforcement officer defendants are entitled to qualified immunity for the warrantless arrest of Miles, Defendants' motion for summary judgment as to Count III is granted.[7]

## III.    State-law Claims (Counts IV - VI)

Miles asserts state-law claims for trespass, invasion of privacy, and conversion against the law enforcement officer defendants in their individual capacities and against the municipal defendants (Count IV). In addition, Miles asserts claims for common-law negligence against the law enforcement officer defendants in their individual capacities (Count V) and against the municipal defendants (Count VI). The Court first addresses the tort claims asserted against the law enforcement officer defendants, and then separately addresses the tort claims asserted against the municipal defendants.

---

[7]    In light of the foregoing conclusions, the Court need not address Defendants' alternative argument that, because Miles's Section 1983 claims are insufficiently pleaded, he fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## A. Law Enforcement Officer Defendants (Counts IV and V)

The law enforcement officer defendants seek summary judgment on Miles's state-law tort claims against them on the basis of official immunity. Official immunity is a common-law doctrine that provides public officials with a defense to state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). Under Minnesota law, a public official generally is entitled to official immunity unless the plaintiff shows either (1) the official did not perform or negligently performed a ministerial duty, or (2) the official committed a willful or malicious wrong when performing a discretionary duty. *Id.*; *see also Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 505 (Minn. 2006).

A ministerial duty is a duty "in which nothing is left to discretion; it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998) (internal quotation marks omitted). By contrast, "[a] discretionary decision is one involving more individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Id.* Generally, law enforcement officers are not purely ministerial officers; many of their duties are executive in character in that they involve the exercise of discretion. *Elwood v. Rice Cty.*, 423 N.W.2d 671, 678 (Minn. 1988). Whether a law enforcement officer's conduct is subject to official immunity turns on the facts of each individual case. *Id.* To determine whether a defendant is entitled to official immunity, the Court identifies the conduct at issue and then determines whether that conduct is a discretionary or ministerial act. *See Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 656 (Minn. 2004).

To the extent that Miles alleges that the law enforcement officer defendants were negligent because their conduct exceeded the scope of the search warrant, the complaint implicates ministerial duties. "Police officers carrying out a search warrant . . . are subject to the direction of the court, and their role is surely 'ministerial,' i.e., not allowing great exercise of discretion." *In re Death of VanSlooten*, 424 N.W.2d 576, 578 (Minn. Ct. App. 1988) (citation omitted); *cf. Pahnke v. Anderson Moving & Storage*, 720 N.W.2d 875, 881-82 (Minn. Ct. App. 2006) (concluding that law enforcement officers' execution of writ of recovery was ministerial duty). A ministerial duty "dictate[s] the scope" of the official's conduct. *Schroeder*, 708 N.W.2d at 506. Here, as addressed in Part II.A., the record reflects that the law enforcement officer defendants acted pursuant to a search warrant supported by probable cause. Moreover, even if the warrant's nighttime authorization were not supported by reasonable suspicion, the officers were objectively reasonable in relying on a warrant that, on its face, authorized a nighttime search. To the extent that the search warrant dictated the scope of the law enforcement officer defendants' conduct, thereby imposing a ministerial duty, the record demonstrates that the law enforcement officer defendants did not perform that duty negligently by exceeding the scope of their authority.

The state-law tort claims in Miles's complaint also rely in part on allegations regarding Officer Coleman's preparation of the warrant application, the damage allegedly caused when law enforcement officers executed the no-knock warrant, and the warrantless arrest of Miles. Conducting an investigation before applying for a search warrant and deciding which facts should be included in the warrant application require

the exercise of discretion. *See Johnson v. Cty. of Dakota*, 510 N.W.2d 237, 240-41 (Minn. Ct. App. 1994). Similarly, the manner in which law enforcement officers execute a "no-knock" search warrant is "a question of common sense and judgment" and is discretionary when it "involve[s] consideration of important policy objectives" such as "effective law enforcement; preservation of life; prevention of serious injury; and minimal property damage." *McGovern v. City of Minneapolis*, 480 N.W.2d 121, 126 (Minn. Ct. App. 1992) (concluding that decision to execute no-knock search warrant using forced entry through exterior wall was discretionary and entitled to official immunity). And performing a warrantless arrest of an individual based on probable cause is "the quintessential discretionary decision" that police officers make routinely. *Armstrong v. Mille Lacs Cty. Sheriffs Dep't*, 228 F. Supp. 2d 972, 991 (D. Minn. 2002). To the extent that Miles's state-law tort claims are based on the preparation of the warrant application, the property damage resulting from the execution of the no-knock warrant, and the warrantless arrest of Miles, such conduct is discretionary. As such, those claims are subject to official immunity unless a willful or malicious wrong was committed.

In the context of official immunity, the terms "willful" and "malicious" are synonymous and are defined as "the intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). "Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999). Here, Miles contends that the law enforcement officer

defendants are not entitled to official immunity because they willfully violated Miles's known rights by (1) executing the search warrant at night despite deficiencies in the warrant application and the inclusion of "reckless misrepresentation[s]" of Miles's criminal history, (2) damaging his apartment door and blinds, and (3) arresting and jailing him. All of this conduct, Miles asserts, was unlawful. But, as addressed above, there is no evidence that Officer Coleman's preparation of the affidavit in support of the search warrant was reckless, let alone willful or malicious. In addition, the law enforcement officer defendants were objectively reasonable in relying on the nighttime authorization in the warrant, even if that reliance was based on a mistaken belief as to its validity. Miles's warrantless arrest, as addressed above, was not unlawful. And there is no evidence that any alleged damage to Miles's apartment door and blinds was caused by an intentional act that the officers had reason to believe was legally prohibited.

For the foregoing reasons, the law enforcement officer defendants are entitled to official immunity with respect to Miles's state-law tort claims and, therefore, Defendants' motion for summary judgment as to those claims is granted.

### B. Municipal Defendants (Counts IV and VI)

Miles also asserts state-law tort claims against the municipal defendants based on the actions of the law enforcement officer defendants. The municipal defendants contend that they are shielded from liability by the doctrine of vicarious official immunity. Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity. *Wiederholt*, 581 N.W.2d at 316. As a general rule, a municipal employer is entitled to vicarious official immunity if the

employee is entitled to official immunity. *Pletan v. Gaines*, 494 N.W.2d 38, 42 (Minn. 1992). Miles offers no reason that this rule does not apply here, and the Court finds none. Because the law enforcement officer defendants are entitled to official immunity with respect to Miles's state-law tort claims, the municipal defendants are entitled to vicarious official immunity as to those claims. Accordingly, Defendants' motion for summary judgment as to those claims is granted.

## IV.    Minnesota Statutes Section 626.74 (Count VII)

Miles asserts that the municipal defendants are liable for the damage caused to his property during the search of his apartment pursuant to Minnesota Statutes Section 626.74 (2016), which provides that "[i]f just compensation is owed for damage caused in the execution of a search warrant or the apprehension of a criminal suspect, the Minnesota local government unit employing the peace officer who sought issuance of the warrant or initiated the apprehension is responsible for paying the compensation." Minn. Stat. § 626.74, subd. 2. "[J]ust compensation" is defined as "the compensation owed to an *innocent third party* under the state Constitution by a Minnesota local government unit due to property damage caused by a peace officer in the course of executing a search warrant or apprehending a criminal suspect." *Id.*, subd. 1(1) (emphasis added).

It is unclear whether Miles, as the target of the search warrant, has standing to assert a claim under Section 626.74, which governs compensation owed to an "innocent third party." *Id.* In any event, the Court declines to exercise supplemental jurisdiction over this sole remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3); *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) ("[I]n the usual case in which all federal-

law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))); *accord Whalen v. Langfellow*, 731 F. Supp. 2d 868, 887 (D. Minn. 2010) (dismissing Section 626.74 claim on this basis).

Accordingly, Miles's claim for compensation under Minnesota Statutes Section 626.74 is dismissed without prejudice.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.     Defendants' Motion for Dismissal and/or Summary Judgment, (Dkt. 29), is **GRANTED**;

2.     Counts I through VI of Plaintiff's complaint, (Dkt. 1), are **DISMISSED WITH PREJUDICE**; and

3.     Count VII of Plaintiff's complaint, (Dkt. 1), which asserts a violation of Minnesota Statutes Section 626.74, is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  July 5, 2017                                     s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge